consolidated case numbers 19-1901 19-1903 and 19-1944 United States of America versus Deshaun Tisdale et al. 10 minutes for each defendant 30 minutes for the plaintiff Mr. Amberg you may proceed for the appellant morning good morning everybody thank you Mr. Milton your honors hello it's great to see you all James Amberg on behalf of Mr. Tisdale I would reserve two minutes for rebuttal time for my argument but that being said your honors I would rest on our briefs that we filed filed our original appellate brief and our reply brief as well when you look at both of those briefs you can see that one of the major issues in this case is this incident that takes place on January 31st of 2017 we have numerous arguments about how we should have had a self-defense instruction a trial that an assault wasn't proven and also we've argued that in our reply brief as well so the self and self-defense instruction uh what if the occupant of the house had thrown the brick back at him well one thing on a self-defense one thing I would say to that your honor and I want to be clear on the facts of what happened per the testimony at the trial is that the brick is thrown but then the people leave but the leave and then they come back later um how much later not that long right 10 went back they they get into two cars come back but then they all the people all get in one car and then that's when they pull up um in the street in front of the house and they get out and then the gunfire begins from we don't we don't know who the gunfire started with it was somebody it could have been in the street it could have been the house we don't know as far as self-defense goes your honor to answer your question um throwing a brick back um you could defend yourself from that if the brick was thrown after after throwing the brick at them and they throw it back at you you get a self-defense instruction what no no it has to be a like kind like if you're gonna if you're gonna defend yourself it has to be a you can defend yourself against somebody but you can't necessarily kill them i agree you can throw it back well nobody throws a brick back in this case the brick is thrown through the the window your honor and um then 15 20 minutes later the the people come back including my client comes back i understand that say the brick is thrown back at you do you get a self-defense instruction for initially throwing the brick at somebody well i would argue in this case with the time with a 15 minute time period in between if somebody if i was sitting there and i threw a brick at somebody that person takes the brick throws it back at me i don't get a self-defense instruction if let me if i let me ask you this what answer good answer let me include your 15 minutes so you throw the brick in this is you're business of home invasions you throw the brick in you realize someone's inside so what you do is you go get all your guns and you come ready to shoot if you need to to get in you're going to get in by any means necessary and they fire at you first you get a self-defense instruction that's your argument right well you you it is your honor in a sense and i would say you do because when you're bringing someone's home and they're just defending their premises you get a self-defense instruction and here's why here's why your honor because at the time the brick is thrown through the home the only crime that has been committed is a vandalism a brick has been thrown through a window then the people leave it's part of it's part of a scheme to rob the house even if even if arguably it may be it may ultimately be it never gets to that point because what happens is they leave and when they come back then the the shooting begins the subjective intent i would argue of the people is not relevant to the inquiry it's just to maybe isolate the point here is the point that if the shooting had started right away be a different story to you it's all about the 15 minute break well i believe the shooting starts right away they throw the brick in gunfire out you agree no self-defense instruction if your client shoots at that point right and not necessarily your honor here's why with that because when you look at when you use a self-defense instruction you can respond to like let's say like the brick if you throw the brick back you don't get a self-defense instructor if you throw the brick and somebody shoots you i would argue that you may if you couldn't have a the ability to retreat even even assuming even assuming the brick throwing is part of a robbery so in other words take the 15 minutes out of it it's all one robbery you throw bricks in you wait to see if it's quiet and then you go in this time it's not quiet they shoot back because they know they're being robbed you get a self-defense instruction well i i believe that you have to look at the nature of the i guess the response to the initial act but in this particular case we don't know what had happened we don't know what was going on and who even took these shots or what was happening but i would i would argue that there are times when you can have a self-defense instruction in michigan even if you are the like-kind conduct is coming back to you so you mentioned the retreat requirement which is an aspect of michigan self-defense law i think correct so why didn't you why i'm sorry i was just asking why didn't why why couldn't your client have retreated here they weren't it wasn't in the house at the time the shooting started right correct the reason why and and here's the factual scenario that the facts from the the transcripts and we were at the trial but what basically testified to with both the cooperating witnesses who were there basically the testimony is a little different but essentially when as soon as the vehicle stops and the doors open the shooting begins so it's not like the gentlemen are up at the house trying to break in the car stops the doors open i believe it was mr crockett says the shooting starts before anybody even gets out of the vehicle um the mr taylor says they were just out of the vehicle and the pretty close in time so there's really nowhere to run to it they're being shot at with a hail of bullets both witnesses testified to that if you're shot before you get out of the vehicle couldn't you just drive away well my client wasn't the driver he was just getting shot at who was who was the driver uh crockett it's all crockett's fault well you know i'll tell you your honor i believe that with self-defense there we should have been able to argue that i know judge murphy did allow us to argue it without getting the instruction but it made you made a major difference the only other thing your honor is i wanted to address um that's uh is on our reply brief was the drug quantities and i felt as though we briefed that pretty well in our sentencing memorandum to explain how the amount that we found was far more than uh what was presented at trial and um with mc reynolds uh with that new decision that came out uh our argument is that judge murphy didn't make the particular findings for foreseeability um and connecting mr tisdale to the that amount of marijuana and thank you very much for your time your honor thank you all right who's up next good morning your honors john brewster is up next uh good morning your honors um i represent uh d'angelo davis in this matter and i uh reserve uh two minutes um for rebuttal please okay um as you know this uh involves the playboy gangster crips in detroit uh an alleged gang and uh supposedly d'angelo davis was a member of that gang um and i specifically went at the uh predicate acts in my uh brief as far as uh they were not proven against my client uh so in a in a sense he was found not guilty of those uh two predicate acts uh he was found guilty of the conspiracy and i believe that under the driver case uh which was an outlaw motorcycle gang case that you can look de novo at the um evidence in this case and um the lower court you'll see was uh incorrect not correct you you concede we view the evidence in the light most favorable to the government now right yes and the government as i understand it presented uh evidence that he attended meetings on behalf of the gang used gang sides wore gang colors posted related pgc related material on social media sold drugs and committed other crimes for pgc and held rank within pgc why isn't that enough well uh judge murphy a number of times would instruct the jury that uh being a member uh in and of itself of playboy gangster crips is not enough and there were no uh police officers that ever said it um but twice by selling drugs and holding rank wasn't he especially the way the gang was presented to the jury wasn't that enough to show he adopted the goal furthering or facilitating pgc well um the government argued that uh he was in photos with other gang members and that's not correct he was never in any of those photos uh any of the group photos he had no tattoo um and a blanket statement by um dewan taylor um who is not credible i don't believe in front of the jury because he uh um this goes back to judge the par's first point we're not at that stage but right what uh but i would say that a blanket statement by dwan taylor that he sold drugs uh is not enough uh why why are you using the word blanket he sold drugs that's evidence yes uh but that's not enough in the driver case um driver was actually found guilty of a predicate offense of selling drugs but the other uh offense of uh violation of the travel act um your court looked at that and said that's not enough and it's very tenuous as to his relationship with the gang so that's my argument that it was very tenuous um we had no uh police reports of mr davis selling drugs from the sunoco uh nothing so i i rarely cross-examined any of the police officers on that matter and then that kind of dovetails too into uh what mr amberg said about the amount of drugs uh and there i believe uh judge murphy um said it was uh um and there he did give a blanket statement well i i read some uh pre-sentence reports and saw a lot of evidence during the trial but that's not enough just to uh say that your honor so i believe under mc reynolds which was decided after after this case it was decided in july of this year it looks to the uh the issues of scope and agreement and uh foresee foreseeability and here there was your argument that your client could not have known how successful this gang was in just in selling marijuana well how successful uh i mean the scope the quantity of drugs sold absolutely because you don't have to know every cranny of this of the conspiracy right and this was a pretty successful conspiracy well i know uh at one point my client was living in an abandoned house so i mean they weren't that successful uh uh i know they kept their costs down i don't know but uh i mean what what's i mean what's your main i mean is it just you're sort of generically telling us that judge murphy didn't do enough but is there are there yes things about your client that would suggest his knowledge was quite limited and he was a bit player because there's some evidence in the record about the success of the the game if you want to call that there's no um police reports saying that uh davis was apprehended at the sonoco station and selling drugs and um so it's just basically dwan taylor uh saying that and uh i don't believe that's enough based upon his his uh testimony in front of the jury about the the robberies so uh and that was not proven against mr davis and that's that's angling towards his participation at all versus the overall efforts of the of the gang and whether he can be held accountable for those efforts yes and i believe um even the uh the driver case again looked at the tenuous nature of the participation and i suppose it's a level uh they said uh his nickname was tiny tiny gangster so so that's a level going down but but uh in and of itself being a member of that group uh it's not enough to uh the rico statute that was written in the early 70s by a notre dame law professor and uh but it tried to uh close some loopholes uh but of more serious cases i would argue than than this one um so uh i believe you can uh look at the uh level of degree and decide whether uh that's enough knowing that the uh two predicates uh were swept away by the jury thank you all right thank you mr grostic i think you're up thank you your honor uh i'm christian on behalf of uh winston hill uh i'd like to reserve two minutes for rebuttal and uh may it please the court this is a case where on direct appeal the court can and should recognize an ineffective assistance of counsel claim oh that's such a steep bill uh help help me out why we i mean you know for what it's worth you know this um doctrine of ours is designed to protect the yes that's the real point i mean so tell us the prejudice if we wait for the 2255 right and and here the the overall prejudice is the a series of unnecessary proceedings and i'll have to flesh that out a little bit so first of all um every 2255 results in a series of proceedings but in this one the district judge uh in in overruling his co-defendant's similar objection has already indicated he's applying the wrong standard so unless the court believes that the district judge is going to reverse himself what we're going to get in this 2255 proceeding is a ruling against uh mr hill an appeal a correction of that error which i'm happy to explain and i intend to explain and then ascend send it back again remind me remind me what his sentence is remind me what client sentences his sentence is i believe 240 months i'm sorry i don't have any and your arguments on ineffectiveness are gonna get it to zero or they aren't will they get it below 24 months no they won't okay so the thing like i i 2255 is so strange this custom we have of it going back to the very district court judge i've never understood that so you've got me there but this the way we've been doing it for a long time and the the downside i think you're right about this exact point it doesn't sound very promising you might reconsider but the real reason we do this is so you can gather all the claims you know you you see how the dust settled um and then you you decide okay given that it's a 240 month sentence maybe we really need to rethink this argument we maybe didn't make below but it's now a plain air argument and or well it's really an ineffective assistance argument because it would be plain air so that's that's why i think we have this uh strong inertia in favor of waiting for the 2255 yes and and and uh those are the reasons absolutely in this case um first of all the court can review it because the record's adequate because everything that council did was in filings and in the court um not about what council discussed with his client or advice he gave and then as i said um we're the the district court has already indicated that it's it's applying the wrong standard here and by wrong standard i'm specifically focused on the maintaining but how do you how do you how are you so sure there aren't other arguments i mean you're forgive me i know i know how good you are so that's i'm saying this tongue and cheek you're potentially setting up an ineffective assistance claim about a direct everything before you do the 2255 i'm a bit confused i'm sorry no no here's my point it's arguably forgive me it's arguably not in your case but it's arguably in the abstract ineffective assistance to bring an ineffective assistance claim on direct review i think there are times it can be yes right well how would i know okay the only instance i can think of when it can be would be if council urges something that can't be proven with the existing record because then they may have they may have created law of the case that they lose on a particular point that they could have won with a developed record a related question which is back to judge sutton's kind of initial where he was going what yes he did that's pretty lenient generous to begin with but then go ahead i'm sorry no it is more generous but his his his appropriate guidelines range with just the maintaining the premises enhancement uh enhancement off would have been i believe uh three years lower right there okay so you're talking about let's 20 years versus 17 years let's say generously you get it all the way down to 10 years right right what back to judge sutton's initial question which is i'm like him i'm very hesitant initially even with an attorney as good as yourself sometimes you miss things and then we deal with the second ineffective assistance of appellate counsel when you miss things what's the harm in being careful in this instance going back establishing a record which i judge sutton and i can talk offline but i think district judges can do fine because you're not attacking the district judge per se although you are in this instance but and establish the record then even if the district judge gets it wrong we have the entirety of the record and we can look at all the various claims at once why isn't that efficient when he's not going anywhere either way and and it could be i think perhaps i'm i'm sensing from uh both of your questions something that i i don't think is the law which is that by deciding these ineffective assistance claims on direct appeal he has now waived or forfeited any that's what i was that's what i was going to ask you are you allowed are you allowed to split up at 22 55 like i i wouldn't what i'm sorry no you're not allowed to split up at 22 55 but but ineffective assistance claims on direct appeal aren't 22 55 claims then if they're decided on direct appeal so he still has but can you bring an ineffective assistance claim in other words isn't it law of the case so forget 22 55 i mean you you decide ineffective assistance of trial counsel in the direct appeal now when you bring the 22 55 aren't you barred from bringing ineffective assistance claims as to trial counsel not appellate counsel not on different grounds no oh really yeah right yeah right right and and i i think the easiest way to explain that is is simply that as the court as the supreme court has looked at claims and claims is a very uh do you do you have a case that says do you have a case that confirms this point because i don't off the top i off i'm at my fingertips but i'd have to be happy to to supplement on a scale of nine to one to ten you're at a nine or ten level of confidence yes i would say i'm at a nine level of confidence because i'm a lawyer and i'm hesitant to ever say ten right good for you um but uh all right well your your that's a helpful point um um yeah we'll think about it um did you want to spend i'm just reading between the lines here do you want to spend a minute on your uh handcuffing argument um i think doesn't survive i think the briefs fairly well lay that out actually and i think i think the issue for the court which i think is well framed is is it enough for the court to say i'm willing to instruct the jury to not consider this and then inquire if they say if any juror says no i can't do that or must the court give the opportunity to actually inquire of the jurors ahead of time and we argue that the court has to give the the council the the opportunity to inquire um for example in the chipman case that's what the court allowed and found then that a juror may have said i can follow that instruction but i'd already told another juror and so in that case the district court uh dismissed that juror just start tying district courts handle hands a little bit to not give it the option um which it fully which it fully previewed i think with council in terms of how to resolve this it it it previewed i i i agree but the i think when the district court tilts the hand then and says i'm going to instruct this is your option and take it or leave it then at that point council has to make a judgment um but without being given the full range of of what's proper under the law all right thank you um mr meisner good morning your honors and may it please the court john mike's on behalf of the united states over a period of years the playboy gangster crips terrorized the streets of detroit they committed carjackings home invasions and robberies they sold drugs and they got into shootouts with rivals endangering the public all three appellants in this case were central members of the game during a two-week trial a jury convicted each of them of rico conspiracy among other charges that same jury heard three cooperating gang members testify repeatedly about how each of the appellants consistently sold drugs and actively worked within the gang structure and specifically how mr tisdale shot repeatedly into a house during a home invasion because he had a specific role as a shooter in the game so mr mike mr meisner i think we i think the general stuff you know i think we got we got that maybe we could just kind of walk through the about the self-defense instruction how do you want to respond to that certainly your honor i think there are three separate ways that mr tisdale was barred from bringing that self-defense instruction i'll touch first on the initial aggressor uh idea which the court went through in some detail uh i think throwing the brick through the window and when all of the gang members returned to the house has to be looked at in context collectively so it is it is a little strange i i didn't think the normal plan was brick through window go hang out for 15 minutes come back in fact it's it's actually kind of a strange plan if the idea was to see if anyone was there so why isn't that changed things a little bit well i don't think it changes things because the homeowner still has that fear of what's going to happen from when the brick came through the window which is why the the brick being thrown sort of initiates that aggressive act and if you look at the 911 calls uh they show it's about a 20 minute span of time between when they came in and the individual in the house first calls 911 says the brick was thrown through the window is clearly scared and then in the second call after the shootings happen the caller says they threw the brick through the window earlier they came back they have masks on they were getting out of the car so clearly that person saw this sequence of events a brick comes through his window he had kids and an elderly mother in the house and once individuals start getting out of their cars wearing masks that individual sees the connection of all the series of events here and that's what makes the brick uh initiate that encounter which is essentially the start of an attempted home invasion by this gang so that brick is is the initiating event that rightfully put that person in fear of great bodily injury in addition to being the initial aggressive act mr tisdale was also engaged in the course of a crime during this entire time which also precludes his self-defense argument he and the other gang members were attempting to invade this house to do a burglar or a home invasion if someone was present inside the statute bars the self-defense application in that context and there was testimony from gang members saying yes we were planning to go into this house when everyone got out of the car and the third bar your honor is that mr tisdale had a duty to retreat uh if he was in some kind of bodily danger and i think your honors uh covered this uh well during mr tisdale's argument he had just gotten out of the car at the time the shots happened there's no evidence that anyone else of all the two cars full of gang members uh fired any shots back into the house mr tisdale was the only one who did that he very easily could have retreated either back into the car to drive away behind a car he could have run there were many other options available to him other than unloading his pistol into this occupied house so all three of those different things how about the how about the fact finding by judge murphy on marijuana drug quantity yes your honor so i'd like to walk through just at least to make totally clear how that calculation was arrived at so there were two other gang members who had proffered with the atf and described that the gang was selling between half a pound and one pound of marijuana per day the probation department uh took that average calculation and applied it to the years 2014 through 2017 which was a conservative estimate of when mr davis and mr tisdale were in the gang and arrived at a quantity of 465 kilograms of marijuana which is the the drug quantity range that the judge came up with now that's conservative for other reasons it didn't account for pills or other drugs that the evidence showed that the gang members were that uh you know all 15 members of this gang or so were selling drugs at the gas station and a series of trap houses now there's the separate question i think your honors are getting to about what was foreseeable for mr tisdale and mr davis uh there was again significant evidence that both of these individuals had ranking positions in the gang mr tisdale had the second highest rank in the gang mr davis also held rank in the gang and the testimony at trial was uh clear that mr davis was a member of this gang he attended meetings he wore gang colors he posted gang materials to facebook and what's also i think important to understand is this gang is not selling drugs all over the city of detroit it's not individual members selling at their own different locations there were a few separate key locations that were testified about there was a on one street so it's not like mr davis could be or mr tisdale could be in this gang uh you know individually selling out of their own houses that's not what was happening the gang members were all selling out of this gas station and out of this series of trap houses uh right where everyone would see it so there's good how about how much a shift to davis's counsel's arguments um about the conspiracy when you know they don't have the predicate acts and why why can it be found guilty of the rico conspiracy nonetheless can i apologize can i just go back to the last point you're just finishing i thought i thought maybe you um counsel you were going to address the mcreynolds case i don't think that was in i think it's only in the reply brief so maybe you didn't get to brief it and that's pretty heavily relied on by your friends on the other side did we change our standard there did we sort of raise the bar for what a district court has to do in terms of its findings because they sort of criticize judge murphy for maybe taking a few shortcuts or not articulating fully the basis for um his findings here i don't think mcreynolds changed any standards judge the standard always was the judge would have to find that uh the drug quantities were reasonably foreseeable to a co-conspirator and i think that the judge properly did that here one important thing to know what about the particularized language from that isn't that yeah um i'm not sure if that if that changes the prior standards judge i think there were other cases that also included that same language but i think two points uh very quickly here first in the context at least of mr davis uh mr davis didn't make any kind of concrete objection to the drug quantity he simply said i don't think the government has proven this amount and that sort of bare objection this court has held in the adkins case and the patel case that we cited in our brief that sort of bare objection is not enough to even trigger any requirement of anything like that so the judge in that circumstance the government says look we can prove 400 to 700 kilograms and he says no you can't there's no evidence of that prove it you say that's not enough i don't think so judge i think that's the sort of bare objection that uh is not enough to trigger now mr uh tisdale i think did preserve his argument he explained here's what mr tisdale's role in the gang is here's the quantity of drugs he was found at least in my experience defendants subject all the time to drug quantity and then i thought the burden shifted to you to demonstrate with particularized findings what the quantity was i think they have to make more than just a statement of it's not proper it's not the correct amount in order to shift that burden they have to how do they do that okay the government is not proven that the conspiracy distributed this amount there's no evidence in the record of this can can a district judge just sentence them based on the government's assertion i think in that circumstance the judge can rightly rely on the pre-sentence report and to make it more concrete here's what mr davis could have done he could have said the the government's not correct in the amount of the drugs the showing at trials only that mr davis held a particular rank there was no testimony that mr davis was at certain locations at certain times he could have gone into detail about what the evidence was to help make it more concrete but even if it is preserved or properly was properly raised your honor i think the judge did make the sufficient findings he found that uh mr davis and mr tisdale both had rank in the gang he found the drug quantity that was uh identified by the probation department was appropriate and to touch just very briefly on the mc reynolds case as judge radler asked about i think that case did lay out the standard it's important to note that case had a sort of very particular fact circumstance so that case involved a drug dealer who was only a very peripheral member of a particular conspiracy and there was a jury finding specifically in that case that the defendant had only uh been involved with a certain quantity of drugs i think was less than 100 grams of heroin less than 500 grams of cocaine and then at sentencing the judge found that that defendant was responsible for a higher quantity so he was going over what the jury verdict was now uh certainly a judge can use acquitted conduct or can i think differ from jury findings at sentencing but that particular circumstance i think triggered a very different sort of uh requirement for what the judge would have to do to make that finding so that's not at all what we have here the jury didn't make any particularized findings about the drug quantities and here the judge was was proper and relying on a pre-sentence report and uh the defendant's roles in the conspiracy uh if i could i'd like to address uh mr hill's arguments about ineffective assistance i think judge sutton's points are well put that it certainly would make uh more uh sense as far as efficiency to but what's what's the answer to the question of what are they not are they barred or not barred in bringing a separate challenge on ineffective assistance grounds to trial counsel if they bring one such claim on direct appeal do you know how that works i don't know the answer to that judge i'd be happy to research and follow up with the court if you'd like i don't know the answer but i don't think that is uh i don't think it matters too much for the decision here because i think what's necessary just to make the determination of whether mr hill's counsel was ineffective or not in his objections is uh findings and evidentiary hearing because there were certainly strategic reasons why mr hill's counsel would not have wanted to raise this objection uh mr hill was the third defendant sentence here so by the time he got to his sentencing he had seen that this exact same objection had been raised and roundly rejected by the court for mr tisdale and mr davis and i think he appropriately could make a decision that he wanted to go after a variance rather than a guideline objection he didn't want to invite the government to parade in all of its evidence about the quantity of drugs uh involved in the conspiracy and i think it's appropriate for a an attorney to decide that's more likely to result in a better outcome for his client and evidently it worked he got a very significant variance from the bottom of the guideline range as your honor is noted so i think there are a lot of things just in that one particular claim even putting aside whether or not uh other ineffective assistance claims might be raised later on there are there's a lot we don't know about what the judge was or what the the attorney was thinking as far as uh his actions in that particular issue um just to briefly address the the handcuff uh issue that judge radler raised at the end there um the judge was appropriate in denying the mistrial uh the facts of this case were very well in line with a number of other cases were similar sort of very brief inadvertent uh occurrences where juries see a defendant in handcuffs uh mr hill has forfeited his argument about um whether the judge should have made any other particularized inquiry he's essentially asking now for exactly what the judge offered to do in the first place so the sequence of events were uh mr hill's counsel raised this issue to the judge the judge uh offered to question jurors individually to see if they could only consider what they had seen in court as the evidence and then follow up if necessary and all three of the defense attorneys uh said no we don't want you to do that we'd rather not have any kind of particularized questioning about the incident so now mr hill is asking for that exact same thing he wants a remand uh because he didn't get any kind of particularized questioning but he was offered uh that exact uh set of circumstances during the trial itself and that's a waiver he was given a chance to take that action and decided not to and unless your honors have any further questions about any of the other issues we ask that you affirm the judgment's consensus all right thank you mr maxner uh all right mr amber did you have some rebuttal i think yes your honors thank you uh very briefly i'll address the issue with mc reynolds when i read mc reynolds it's clear to me that if if we're going to use the acts of everybody in the conspiracy the court has to have a finding of a particularized finding of two separate things first that the acts were within the scope of mr tisdale's agreement within the conspiracy and second that these acts were foreseeable to mr tisdale did you put all these issues in play in my reply brief i did and yes to the court yeah i i made all those arguments okay um and uh and your honor i would say this because there's two dueling issues going on with that uh the drug we have drug quantities and whether or not um this was foreseeable to mr tisdale so it's kind of like two issues but isn't there evidence in front of the district court that he both held the second rank which i think is pretty well established in the gang so and that 0.5 to one pounds of marijuana was distributed daily and wouldn't that be enough for the district court well i i would disagree with respectfully with the government's argument that it was that much marijuana at the trial the one taylor the person who they're relying on he actually testified that they would sell a half ounce of marijuana a day at the gas station that would equate out to about 20 kilograms not 400 um i put out all sorts of facts from the trial that would show that the drug quantities were far less um the gas station was the the primary location for the the drug dealing and to the surprise of the government at trial i had obtained a lot of police reports that showed other people that weren't gang members were selling marijuana there throughout the entire day conspiracy so you got to take your honors that this claim of all this marijuana with a grain of salt the one taylor also testified he was selling marijuana with some other guy who was so scary mr taylor didn't want to testify about him at the trial so the reality is it's far less thank you all right thank you mr bruster yes good morning uh i would like to mention too that uh if they thought davis was selling so many drugs at the gas station uh why didn't uh they have a provision for a special verdict form like in mcrenald's they had a special verdict form which uh apprende requires uh that must the drug amount so are you same same question did you ask for one no i didn't want to shift the burden uh to uh davis as to uh how do you uh how does that shift the burden by asking that the government have to make a specific finding of quantity well i think under apprende they do but there was no evidence that davis sold any drugs out the gas station no police reports to that effect uh so that uh there was uh the uh general uh verdict form as to the conspiracy but then the specific comes to um the assaults with mike explain how it shifts the burden by requiring the government to prove a specific quantity well we didn't well i would say it shifts the burden because uh based upon uh our uh verdict form it doesn't even look like he's charged with the drugs with any drugs whatsoever and then um and then we don't have judge murphy saying uh what mr and going through if he wants to say that let him say that but to say it now after the fact is improper and i will say this that this uh mcrenald's case coming out in july um murphy didn't have judge murphy didn't have that uh uh help or guidance okay now we'll do thank you mr crostic thank you i'd like to address the government's contention that there that there even could have been strategic reasons to uh to well first improperly raised but then not pursue his objections and specifically on the maintaining a premises enhancement first the government says uh he saw that the co-defendants raised and had this uh objection rejected that's not accurate uh mr davis raised the objection and won that's at page id 6 9 8 7 to 89 and when mr tisdale raised the objection the court applied the wrong standard and that's in our brief uh records and law cited on our brief at pages 16 to 17 in this court's decision in the united states versus bankston in 2016 um pointed out that when a when a an attorney gets the law wrong like that and misses an objection that's an effective assistance and the idea that he would have he could have he decided to go after a variance instead his argument was that there was and he said this it's it's at a uh uh page page id 6807 his argument was there is no evidence that he maintained a premises once the court applies the enhancement that there is evidence to support maintaining a premises the court could not have varied downward on uh the basis that there actually was no evidence um this court and and and other courts of appeals have held that um you know a district court can't vary downward making factual findings opposite to the factual findings you've agreed defense attorneys all the time for strategic reasons abandon objections they think will irritate the district court that they don't will carry water and argue for a variance instead i mean as a tactical decision they do that all the time yes your honor but not on the basis that there is no evidence to support the subjection under the proper standard but then i'll i'll argue for a variance using that exact argument and i just say point the case to the united states versus ward uh 796 federal appendix 591 that's the 11th circuit but raises that exact scenario thank you well thanks to all four of you uh complicated case we're really grateful for the hard work all four of you put into the briefs and the arguments today thanks